## UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### NEWPORT NEWS DIVISION

**In re:**

**WELLINGTON APARTMENT, LLC,**   Case No. 04-50301-DHA

      **Debtor.**   Chapter 11


**WELLINGTON APARTMENT, LLC,**

      **Plaintiff,**

**v.**   APN 05-5029

**CHARLES CLOTWORTHY,** *et al.***,**

      **Defendants.**

_____

### MEMORANDUM OPINION AND ORDER
_____

This matter is before the Court on the debtor's Motion to Approve Entry of Order Relating to Poydras (Louisiana), LLC.  The debtor is asking this Court to approve an agreement it reached with Poydras (Louisiana), LLC ("Poydras LA"), whereby Poydras LA would pay to the debtor any monetary distributions that Poydras LA would ordinarily make to WP New Orleans, L.L.C. ("WP New Orleans") and WPN, L.L.C. ("WPN") and would send to the debtor any correspondence, notices, financial reports and other documents relating to Poydras LA to which WP New Orleans and WPN are entitled.

## FACTS

On January 5, 2004, Wellington filed for relief under Chapter 11 of the Bankruptcy Code in the District of Connecticut, Bridgeport Division, and its case was

transferred to the Eastern District of Virginia, Newport News Division, on February 3, 2004. Wellington's sole asset was a 152-unit apartment complex located in Newport News, Virginia.

On June 1, 2005, the debtor filed an adversary proceeding against Charles H. Clotworthy, III, Richard Merel, Steven Byers, Garfield & Merel, Ltd., WP New Orleans, and WPN,[1] based on their allegedly fraudulent conduct surrounding the placement of First Bank's Second Deed of Trust on the debtor's apartment complex. The money obtained from the Second Deed of Trust was used by the defendants to invest in a piece of property in Lousiana ("the Poydras building").

A five day trial was held that resulted in a judgment in favor of the debtor in the amount of $2,546,174.59; additionally, an equitable lien was imposed upon WPN's interest in the Poydras building, a resulting trust was imposed upon Byers' and WPN's interests in the Poydras building and a constructive trust was imposed upon WPN and WP New Orleans' interests in the Poydras building, all until such time that the judgment is paid in full to the debtor.

On September 6, 2006, the debtor filed the instant motion, which was objected to by WPN and WP New Orleans, and therefore a hearing was held on the motion and the objections thereto.

## ARGUMENTS

The debtor argues that it is entitled to the relief requested because a resulting or a constructive trust has been imposed upon WPN and WP New Orleans until the judgment is paid in full. The debtor states that it is entitled to receive all distributions that would be

---

[1] The Complaint included Poydras LA and Marc New Orleans, LLC as defendants, but the debtor ultimately settled its case against both of those defendants prior to trial.

2

paid to either WPN or WP New Orleans and copies of all correspondence Poydras LA sends to either entity. The debtor argues that this information is its only form of protection against these defendants.

WPN and WP New Orleans argue that the debtor is attempting to exercise ownership and control over both entities through a document that does not confer such rights. They argue that the Court did not void any transfers or bestow upon the debtor any type of control over WPN or WP New Orleans, but rather merely granted an in personam judgment and pursuant to FRBP 7069 the only remedies the debtor has arise under state execution laws.

## **CONCLUSIONS OF LAW**

### **A. Subject Matter Jurisdiction**

The issue that necessarily must be addressed first is that of subject matter jurisdiction; can this Court properly decide the motion before it? Bankruptcy Courts are courts of limited jurisdiction. *Celotex v. Edwards*, 514 U.S. 300, 307 (1995). Their subject matter jurisdiction is derived from 28 U.S.C. §§ 1334 and 157.

1. §  1334

In § 1334 Congress bestows upon the District Courts "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334 (a) and (b) (2006).

2. § 157

Section 157 authorizes the District Courts to refer "any and all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under

title 11" to the Bankruptcy Courts. *Id*. at § 157(a). The District Court for the Eastern District of Virginia did refer all such cases to the Bankruptcy Judges of the Eastern District of Virginia pursuant to a Standing Order filed on August 15, 1984. Further, on December 13, 1985, that the District Court ordered that because "the bankruptcy court is a unit of the district court, the judgments rendered by the bankruptcy judge and entered by the clerk of the bankruptcy court are judgments of the district court." Standing Order, E.D. Va., Dec. 13, 1985.

Section 157 allows Bankruptcy Courts to hear and determine all *cases* under title 11 and all *proceedings* that arise under or in, or are related to a case filed under title 11. 28 U.S.C. § 157(a). A bankruptcy case is instituted when a petition is filed under Chapters 7, 9, 11, 12, 13, or 15 of the Bankruptcy Code and proceedings arise within bankruptcy cases. This Code section specifically authorizes the Bankruptcy Court to enter orders and judgments in core proceedings that are delineated in § 157(b)(2), and while core proceedings are not defined in the Code, they have been described as "'those proceedings that would not exist in law absent the Bankruptcy Code.'" *Helmer v. Murray (In re Murray)*, 149 B.R. 383, 386 (Bankr. E.D. Va. 1993) (quoting *Levy v. Butler, Payne & Griffin Equity Corp. (In re Landbank)*, 77 B.R. 44, 47 (Bankr. E.D. Va. 1987)). Finally, § 157 grants Bankruptcy Courts the authority to hear and determine non-core proceedings, but states that such courts may only enter judgments in those proceedings with the parties' consent. 28 U.S.C. § 157(c)(2). Without such consent, the Bankruptcy Court must submit findings of fact and conclusions of law in those proceedings to the District Court for determination. *Id*. at § 157(c)(1).

a. *"Arises Under"*

A proceeding "arises under" Title 11 when "'a well-pleaded complaint establishes either that federal [bankruptcy] law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal [bankruptcy] law.'" *Poplar Run Five Ltd. P'ship v. Va. Elec. & Power Co. (In re Poplar Fun Five Ltd. P'ship)*, 192 B.R. 848, 855 (Bankr. E.D. Va. 1995) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)).

The Ninth Circuit has found that this sort of "arises in" jurisdiction exists in collection proceedings if the original matter was a core matter according to the Bankruptcy Code. *McCowan v. Fraley (In re McCowan)*, 296 B.R. 1, 4 (9th Cir. BAP 2003); *In re Lawson*, 156 B.R. 43, 46 (9th Cir. BAP 1993). It reasons that the collection of any money judgment entered by the Bankruptcy Court is merely a continuation of the underlying matter and that the subject matter jurisdiction also relates to the collection proceeding. *Id*. The Fourth Circuit has not determined that any such extension of jurisdiction exists.

Thus, under the law in this Circuit, enforcement of the judgment in this case does not involve a substantial federal question and jurisdiction to determine the debtor's motion cannot lie under this wording of the statute.

b. *"Arises In"*

A proceeding "arises in" a bankruptcy case when Title 11 does not specifically provide the basis for it, but without the bankruptcy case, it is of no practical significance. *In re Poplar Run Five Ltd. P'ship*, 192 B.R. at 857 (*i.e.*, the validity of a proof of claim,

which must be filed by creditors in bankruptcy in order to be paid, may be a determination made under state law) *Id*.

It is clear that enforcement of the judgment in this case has practical significance outside of bankruptcy and therefore, jurisdiction cannot lie under this wording of the statute either.

c. *"Related To"*

The Fourth Circuit has adopted the definition of "related to" found in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). *Celotex Corp. v. Edwards*, 514 U.S. 300, 309 (1995), *New Horizon of NY LLC v. Jacobs*, 231 F. 3d 143, 151 (4th Cir. 2000). The *Pacor* court found that an action is related to a bankruptcy case "'if the outcome [of the proceeding] could alter the debtor's right, liabilities, options, or freedom of action (either positively or negatively) and [the proceeding] in any way impacts upon the handling and administration of the bankrupt estate.'" *Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255-56 (4th Cir. 1997), *cert. denied* 522 U.S. 969 (1997) (quoting *Pacor*, 743 F.2d at 994); *A.H. Robins Co. V. Piccinin*, 788 F.2d 994, 1002 n.11 (4th Cir. 1986). Chief Justice Rehnquist best articulated the underlying reasons for this broad definition of "related to" when he said,

> "'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate"…and that the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simply proceedings involving the property of the debtor or the estate."

*Celotex*, 514 U.S. at 309 (citations omitted). In a Chapter 11 case with a confirmed plan, such as the case at bar, the Court must look to the terms of that plan to determine "related to" status. *In re Poplar Run Five Ltd. P'ship*, 192 B.R. at 858.

6

d. *Post-confirmation Chapter 11 cases*

Bankruptcy courts have more limited jurisdiction once a plan is confirmed as the confirmation order becomes the law of the case. *Id*. at 859, *see* 11 U.S.C. § 1142. According to § 1142 the Court retains only enough jurisdiction to implement the plan; that section states:

> (a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.
>
> (b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142(a) and (b) (2006), *see also Brown v. GMAC Mortg. Corp. (In re Brown)*, 300 B.R. 871, 875-76 (Bankr. D. Md. 2003), *Walnut Assocs. v. Saidel*, 164 B.R. 487, 492 (Bankr. E.D. Pa. 1994). Additionally, jurisdiction cannot stand where the action sought has no effect on the bankruptcy case. *HOC, Inc. v. McAllister (In re McAllister)*, 216 B.R. 957, 974-75 (Bankr. N.D. Ala. 1998) (holding that the Bankruptcy Court had no jurisdiction over a non-dischargeble judgment it granted because the garnishment sought by the creditor would not impact the bankruptcy estate as it was an enforcement proceeding against the garnishee and not the debtor). Consequently, unless the confirmed plan in this case calls for the collection of a judgment under the auspices of this Court and the action sought by the debtor impacts the bankruptcy case, we can not exercise "related to" jurisdiction over this motion.

The operative language of the plan states:

7

- Administrative Expense Claims will be paid by the Debtor under the Plan upon the earlier of the Effective Date or when funds are available to pay such claims.

- Class 1 – Claim of NIPM.  NIPM will receive at least one distribution and potentially two distributions: After the payment of Administrative Expense Claims, the Escrowed Funds shall be distributed to NIPM.  In the event that the Debtor obtains any Litigation Proceeds, they will be distributed to NIPM, after the payment of Administrative Expense Claims, until NIPM has received a total amount of $522,000.

- Class 2 – Interest holders.  After the payment of the Class 1 claim of NIPM and Administrative Expense Claims, the Debtor will distribute any Litigation Proceeds to Interest holders in accordance with their interests which are as follows:  50% to NI USA, LLC and 50% to Woodland Holdings, LLC.

Plan, p. 6, Section C.  According to the plan, the only monies to be distributed are the litigation proceeds, should any actually be collected.  While the plan does not delineate steps to do so, the wording does infer that *collection* of the proceeds is contemplated by the plan; for in order to distribute the proceeds they must first be collected.  Furthermore, obviously the action sought impacts the plan as the entire plan is based on the collection the litigation proceeds, without which there is no distribution under the plan.  As a result, the Court may exercise "related to" jurisdiction in regards to the instant motion.

**B.  Ancillary Jurisdiction**

As an alternative to subject-matter jurisdiction as discussed above, the Court may also decide this matter through the application of ancillary jurisdiction. There are two schools of thought on whether a Bankruptcy Court can enforce its own judgment using ancillary jurisdiction; one concludes with a resounding "yes" and the other, made up of only one court, with a very limited "no."[2]

---

[2] This one court is the Northern District of Indiana, Fort Wayne Division.  In *Edwards v. Sieger (In re Sieger)*, 200 B.R. 636 (Bankr. N.D. Ind. 1996), the court found that jurisdiction "must be conferred, not assumed." *Id.* at 639 (citing *Matter of Chicago, Rock Island and Pacific R. Co.*, 749 F.2d 1182, 1188 (7th

It is well settled law that federal courts may enforce their own orders through the application of ancillary jurisdiction, *Peacock v. Thomas*, 516 U.S. 349, 354 (1996); *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934), *Riggs v. Johnson County*, 73 U.S. 166, 187 (1867), *Wayman v. Southard*, 23 U.S. 1. 24 (1825), *Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 752 (4th Cir. 2003). The *Peacock* court also stated that courts must be careful not to utilize this type of jurisdiction to determine new or original proceedings and that it had not recognized any exercise of supplemental or ancillary jurisdiction that went beyond execution of a federal judgment. *Peacock*, 516 U.S. at 357-58. The Court of Appeals for the Fourth Circuit notes that

> ancillary jurisdiction 'may extend to claims having a factual and logical dependence on the primary lawsuit, . . . but that primary lawsuit must contain an independent basis for federal jurisdiction.' The *Peacock* Court reasoned that, while a proper exercise of enforcement jurisdiction will result in efficiencies which outweigh comity concerns, an exercise of enforcement jurisdiction over a factually independent proceeding has no practical benefit for judicial economy.

*Marino*, 349 F.3d at 752 (internal citation omitted). Jurisdiction of this type is employed so "that the court may do complete justice in the chief controversy." *Coop. Transit Co. v. West Penn Elec. Co.*, 132 F.2d 720, 723 (4th Cir. 1943). However, exercising this type of jurisdiction even in aid of judgment proceedings is not without boundaries. *Travelers Indemnity Co. of Illinois v. Hash Management, Inc.*, 173 F.R.D. 150, 153 (M.D.N.C.

---

Cir. 1986). That court goes on to say that the jurisdiction of a bankruptcy court ends when the purpose for which it was given ends. *Id*. at 639 (citing *Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987). Most importantly, that court states that it "must consider the bankruptcy purpose served by…[the] litigation and whether that purpose extends far enough to include the enforcement of any resulting money judgment." *Sieger*, 200 B.R. at 638. The issue litigated in *Sieger* was one of Dischargeability, which the court ultimately found to be a declaratory determination that once made ended the court's jurisdiction. *Id*. at 339-40. *See also Kaminski v. Kaminski (In re Kaminski)*, No. 03-15282, Proc. No. 04-1115, 2006 Bankr. Lexis 1682 (Bankr. N.D. Ind., Fort Wayne Div., July 27, 2006) (holding that once the court determined whether the state court judgment was dischargeable in bankruptcy the Bankruptcy Court's jurisdiction ended, precluding enforcement by that court). Both the *Seiger* and *Kaminski* opinions were issued by Judge Grant. While this Court respects that interpretation and strict constructionist reading of the Code, we must follow the applicable precedential law.

1997) (citing *Natural Gas Pipeline co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397, 1406 (5th Cir. 1993) (holding that ancillary jurisdiction over judgment enforcement can not overcome a lack of statutory or rule authority to conduct discovery with a third party).

Bankruptcy Courts, as units of the District Courts, *Grewe v. United States (In re Grewe)*, 4 F.3d 299, 304 (4th Cir. 1993) (citing 28 U.S.C. § 151), are also entitled to enforce their own judgments.  See *Hall v. Davenport (In re Hall)*, No. 95-1359, 1996 U.S. App. Lexis 1173 (4th Cir. 1996) (denial of the judgment debtor's motion to quash a garnishment summons issued by the district court based on a judgment entered in the bankruptcy court), *Carlton v. Firstcorp, Inc.*, 967 F.2d 942, 944 (4th Cir. 1992) (holding that the bankruptcy court was authorized under § 105(a) to issue an injunction to prevent the continuation of ongoing government administrative proceedings that were excepted from the automatic stay), *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1002  (4th Cir. 1986), *cert. denied*, 479 U.S. 876 ("It has been repeatedly held that 11 U.S.C. §§ 105 [...] 'empowers the bankruptcy court to enjoin parties other than the bankrupt' from commencing or continuing litigation." (internal citations omitted)), *Coop. Transit Co.*, 132 F.2d at 723 ("Because a suit exists in state court that never left the jurisdiction of this court after removal, this court can exercise ancillary jurisdiction to dispose of a factually interdependent claim, vindicate its authority, and protect its judgment."), *Executive Risk Indemnity, Inc. v. Brooks (In re Jackson Brook Institute, Inc. and In re Viburnum, Inc.)*, 280 B.R. 779, 784 (Bankr. D. Me. 2002) (citing 11 U.S.C § 105(a) as a basis for authority to enforce judgment orders), *Ricker v. Sams (In re Sams)*, No. 87-4-3254, Adversary No. 88-A-0055, 1990 Bankr. Lexis 668, at *2 (Bankr. D. Md. Mar. 13, 1990) (holding that

10

the Bankruptcy Court retained jurisdiction to enforce its own judgment after the bankruptcy case was dismissed because the judgment was not voided as a matter of law when he bankruptcy case itself was dismissed), *Temecula v. LPM Corp. (In re LPM Corp.)*, 300 F.3d 1134, 1136-37 (9th Cir. 2002) (holding that before the bankruptcy court could issue a writ of execution on a money judgment it entered against the debtor the judgment creditor must obtain a lift of automatic stay), *Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 481 (9th Cir. 1989) (holding that bankruptcy court retained jurisdiction over ancillary issues, such as attorney's fees, after the dismissal of the underlying bankruptcy case), *State Bank of Spring Hill v. Bucyrus Grain Co., Inc. (In re Bucyrus Grain Co., Inc.)*, 127 B.R. 52, 53 (Bankr. D. Kan. 1991) (bankruptcy court denied stay from a writ of execution it issued on its own judgment).  Therefore, following the law of the Supreme Court and the Fourth Circuit we find that this Court has the authority to enforce its own judgment through the application of ancillary jurisdiction.  *Travelers Indemnity Co. of Ill.*, 173 F.R.D. at 152-53.  Thus, we have two independent bases of authority on which to hear and determine debtor's instant motion.

## C.  Relief Requested in Debtor's Motion

The debtor is requesting that this Court approve an order under which Poydras LA agrees to pay to the debtor any monetary distributions from the operation of the Poydras building that would ordinarily go to WPN and WP New Orleans.  Additionally, the debtor wants this Court to order Poydras LA to provide the debtor with any financial information, notices and communications regarding the Poydras LA that WPN or WP New Orleans receives from Poydras LA.

Fed. R. Civ. P. 69, applicable to adversary proceedings in bankruptcy court through Fed. R. Bankr. P. 7069, describes how judgments are to be executed. It states:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.

Fed. R. Bankr. P. 7069 (2006). According to this rule, unless the Court directs otherwise, in order for a judgment creditor to enforce a monetary judgment it must follow the execution law of the state in which the district court sits, which in this case is Virginia. *See S&D Land Clearing v. D'Elegance Mgmt. Ltd., Inc.*, 34 Fed. Appx. 885, 892-93 (4th Cir. 2002) (utilizing North Carolina's supplemental proceedings law to enforce a money judgment when the supplemental proceeding was filed in a District Court in North Carolina), *Travelers Indemnity Co. of Ill.*, 173 F.R.D at 153-56 (same).

In Virginia, in order to enforce a money judgment a creditor must wait twenty-one days after the judgment's entry and then request a writ of fieri facias be issued by the clerk of the court that rendered judgment. Va. Code § 8.01-466. That writ must then be delivered to the proper person for execution. *Id*.

In the instant case, this Court will not authorize the debtor to deviate from the enforcement procedures found in the Virginia Code as it attempts to collect the judgment debt from WPN and WP New Orleans. Therefore, the debtor's motion to receive the

12

payment of money from Poydras LA is premature as no writ of execution has been obtained, as required by § 8.01-466.

As for the request for turnover of Poydras LA's financial and other written documents that WPN and WP New Orleans may receive in the future, the Court again refuses to authorize the debtor to receive that information without following the proper procedure as dictated in the Virginia Code pertaining to discovery proceedings in aid of a judgment. Va. Code § 8.01-506.1 states that in order to obtain book accounts or other written documentation the judgment creditor must request the issuance of a subpoena duces tecum for their production. Va. Code § 8.01-506.1 (2006). Without the issuance of such a subpoena, this Court will not order that financial records be turned over.

## **CONCLUSION**

We have determined that the following resolution of the issues presented is appropriate under the facts of this case and the law as applied to those facts:

1. This Court has subject matter jurisdiction as described in 11 U.S.C. § 157 over the enforcement of the underlying judgment and, therefore, over the instant motion.

2. This Court also has ancillary jurisdiction over the enforcement of the underlying judgment and, therefore, over the instant motion.

3. However, the Motion to Approve Entry of Order Relating to Poydras (Louisiana), LLC is **DENIED** as the debtor has not complied with the appropriate procedure for judgment enforcement pursuant to Fed. R. Bankr. P. 7069.

**IT IS SO ORDERED.**
Newport News, Virginia
October 20, 2006

                                          DAVID H. ADAMS
                                          United States Bankruptcy Judge

Copies to:
    Karen M. Crowley, Esq.
    Michael L. Donner, Sr., Esq.
    Douglas M. Foley, Esq.
    Cecilia Ann Weschler, Esq., U.S. Trustee's Office
    Benjamin C. Ackerly, Esq.
    Peter G. Zemanian, Esq.